## Exemption of Legislators from Arrest

RUTTER, Deputy Attorney General, March 5, 1940.— By your communication of August 12, 1938, you ask us to advise you of the answers to three questions relating to article II, sec. 15, of the Constitution of the Commonwealth of Pennsylvania. These questions are:

1. Are members of the General Assembly exempt from arrest on sight and exempt from service of summons for violation of The Vehicle Code of May 1, 1929, P. L. 905, during that period between the opening of the General Assembly and final adjournment, with a reasonable period of time for each member to reach his home?

2. Should a violation of The Vehicle Code, supra, be noted during such period, should prosecution be properly entered and warrant or summons be held in abeyance pending final adjournment or should there be no prosecution during the period indicated?

3. No immunity from arrest is afforded by the Constitution in cases of felony, treason, breach or surety of the peace. Should any of the violations of The Vehicle Code be construed as a breach or surety of the peace?

Article II, sec. 15, of the Constitution of the Commonwealth is, in part, as follows:

"The members of the General Assembly shall in all cases, except treason, felony, violation of their oath of office, and breach or surety of the peace, be privileged from arrest during their attendance at the sessions of their respective Houses and in going to and returning from the same . . .".

The privilege from arrest accorded members of the Congress by the Federal Constitution, art. I, sec. 6, Clause 1, is almost identical in wording. In part it reads:

"They [members of Congress] shall in all Cases, except Treason, Felony and Breach of the Peace, be privileged from Arrest during their Attendance at the Session of their respective Houses, and in going to and returning from the same . . .".

Shortly after the adoption (1873) and effective date (1874) of the Constitution of the Commonwealth, the foregoing section 15 of article II thereof came under the scrutiny of the Delaware County court in Commonwealth ex rel. v. The Keeper of the Jail, 1 Del. Co. 215, 4 W. N. C. 540 (1877). That court held that the privilege extended to members of the General Assembly could be claimed

only in cases of civil restraint, where no crime is charged; and that "breach or surety of the peace" included all indictable crimes.

The subject privilege is but the written expression of an ancient parliamentary immunity which existed in England. The privilege, as there enjoyed, applied only to prosecutions of a civil nature and excluded all crimes. And, as used in the Constitution of the United States, supra, the words "Treason, Felony and Breach of the Peace", except from the privilege *all criminal offenses:* Williamson v. United States, 207 U. S. 425.

In a report to the House of Representatives of the General Assembly on January 29, 1878, the Committee on Judiciary General reported, inter alia:

"We are therefore of opinion that the words 'breach or surety of the peace' in the fifteenth section of the second article of our Constitution are used in the same sense, and must receive the same construction as that given to a similar clause in the Federal Constitution, and to the same words as they are used in limiting the personal privileges of members of the English Parliament, and that against any indictable offence privilege cannot be pleaded. . . . The fact that the offences charged are criminal in their nature is an end of the matter with us . . .": Case of O. F. Bullard, 1 Del. Co., 218, 221, 222.

We are not unmindful that the Court of Common Pleas of Erie County decided on April 2, 1883, that a State senator was privileged, under the subject provision of the Constitution of the Commonwealth, from service upon him of a writ of assumpsit, while home on a leave of absence from the Senate, then sitting. But that was all that case could decide, for that was the only issue therein. The process involved was civil, not criminal: Gray v. Sill, 13 W. N. C. 59 (1883).

In 1889, the Dauphin County court decided that a State representative was privileged from service of civil process within 24 hours after the House adjourned, the summons

there being one in assumpsit: Ross v. Brown, 7 Pa. C. C. 142 (1889) ; Gyer's Lessee v. Irwin, 4 Dall. 96, 1 L. ed. 762 (1790) (by implication).

In an ably-argued and carefully-considered case before the Common Pleas Court of Philadelphia County in 1788, that court held that a member of the convention assembled at Philadelphia to consider the adoption or rejection of the proposed Federal Constitution was privileged from service of a summons in a civil suit: Bolton v. Martin, 1 Dall. 317, 1 L. ed. 144 (1788). The court, in the Bolton case, went on to say by way of dictum that a member of our assembly was not subject to arrest while the assembly sat.

To recapitulate: Gray v. Sill, supra, involved only service of a writ in a civil suit; to the same effect was Ross v. Brown, supra. The case of Gyer's Lessee v. Irwin, supra, decided by the Pennsylvania Supreme Court, actually held that the defendant had waived any privilege he might have had; and in any event, the case (to paraphrase Shippen, President, in Bolton v. Martin, supra, at page 148 of 1 L. ed.), decided at so early a period, when the rights and privileges of the General Assembly were so little ascertained and defined, cannot have the same weight as more modern authorities. The Bolton case, supra, related to the Pennsylvania convention held to consider the proposed Federal Constitution, and did not involve either the Constitution of the Commonwealth or of the United States; and it too, as to age, falls into the class of Gyer's Lessee v. Irwin.

In our opinion, also, the early cases were decided at a time when arrest, as for debt, was a common incident of civil process. It no longer is. Consequently, the reasons then necessitating the protection of members of legislative bodies such as Parliament, the constitutional convention at Philadelphia, and the Assembly of Pennsylvania, from arrest, no longer obtain. And, no one, then or now, should be exempt from criminal process.

That our view is the more modern and practical one, and that it has the support of public policy as expounded

by the courts, is borne out by the Bullard case, supra, and by the Supreme Court of the United States in the Williamson case, supra. Also, and of acute importance, is the report of a committee of the House of Representatives of the Commonwealth, to the House itself, *which committee was investigating the Bullard incident*, that the proper interpretation of the constitutional privilege of House members was that pronounced by the Federal courts. No one is more jealous of a privilege or of an immunity than the one who enjoys it.

We are of the opinion, therefore, and you are accordingly advised, that members of the General Assembly have no privilege from arrest on sight, or from service of summons, for violations of The Vehicle Code of May 1, 1929, P. L. 905, at any time.